United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,                  Criminal No. 13-20597

v.                                        Hon. Arthur J. Tarnow

D-6 Kevin Backstrom,

        Defendant.

---

United States' Supplemental Brief Regarding the BOP'S Use of Release Authority & Requests for Release Submitted by Backstrom

---

Kevin Backstrom, who has five, separate state and federal drug-trafficking convictions, wrote to this court seeking legal assistance for the purpose of filing a Compassionate Release motion. (R. 173, 1st Backstrom Letter; PSR¶¶ 36, 37, 39, 40; R, 151, Judgment). This court ordered the United States to respond to Backstrom's letter seeking legal assistance, appointed counsel for Backstrom, and set a hearing on a "Petition for Compassionate Release" on July 6, 2020. (R. 174). The BOP

1

has now twice verified that Backstrom has not submitted a request for release to FCI-Terminal Island's warden. His request should be denied.

The United States now files this supplemental brief to comply with this Court's July 6, 2020, order directing it to provide 1) the number of administrative petitions or requests for early release that have been received by the warden of Terminal Island FCI and the number that have been granted, and 2) copies of all the petitions or requests pertaining to release or transfer—whatever the form used—filed by Backstrom since February 1, 2020.

The United States persists in its objection to this Court's order deeming July 6, 2020, as the date that Backstrom filed his Compassionate Release petition with BOP. The relevant statute precludes this court from considering Backstrom's Compassionate Release petition because he has yet to submit his request to the facility's warden. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The relevant statute expressly authorizes an inmate to file a petition with the court only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or a lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier." *See also, United States v. Alam*, --- F.3d ----, 2020 WL 2845694, at *2-*3 (6th Cir. 2020). As the Sixth Circuit explained in *Alam*, exhaustion of administrative remedies is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* The laudable purpose of the exhaustion remedy ensures "an orderly system for reviewing compassionate-release applications rather than one that incentives line-jumping." *Id.* Line jumping is exactly what Backstrom now attempts here by resorting first to the court. If this court were to reward Backstrom's attempt to jump the line, it would only further burden BOP's resources and result in inequitable treatment among inmates.

## I. Backstrom's Claims Are Not Corroborated By BOP Records

### a. BOP Twice Has Confirmed Backstrom Did Not File An Administrative Claim

Backstrom has repeatedly claimed in filings and through counsel that he has submitted a request to his facility's warden at FCI Terminal Island. Records obtained from the BOP, however, contradict Backstrom's claims. The United States submitted a declaration signed under penalty of perjury by BOP official Maricela Bugarin indicating

3

that Backstrom had not filed a request with the warden as of July 2, 2020. Ms. Bugarin specifically stated: "I have also personally reviewed the administrative records from the SENTRY database pertaining to whether Mr. Backstrom has exhausted the mandatory Administrative Remedy Process. I have been unable to locate any requests made by Mr. Backstrom and submitted to the Warden through counsel or without counsel. A review of SENTRY further indicates that there is no information of Mr. Backstrom ever submitting an administrative remedy." (R. 181, Burgarin Decl. ¶9) The SENTRY records provided to the U.S. Attorney's Office on June 29, 2020 showed that BOP received no administrative claims from Backstrom. Bugarin further stated that FCI-Terminal Island had not received any RIS (compassionate release) requests for Mr. Backstrom. (Burgarin Decl.¶11)(Exhibit 1 Bugarin Decl. & Attached BOP Exhibits A & B).

Following the July 6th hearing, the United States informed the BOP of the court's order. On July 10, 2020, BOP counsel informed the U.S. Attorney's Office of the following: "there are no written requests (formal or informal) from Backstrom requesting compassionate release OR home confinement. He simply hasn't submitted anything to his Unit

4

Team." BOP counsel further informed the U.S. Attorney's Office that they were unable to locate any records in TRULINCS, an electronic email system accessible to inmates, illustrating that Mr. Backstrom had requested release. TRULINCS is the same system Backstrom used to send an affidavit to his attorney, which was filed on June 29, 2020. (R. 179-1). Presumably, Mr. Backstrom's release requests submitted via TRULINCS would have been captured if he, in fact, had submitted one.

### b. *BOP Records State That He Was Asymptomatic For Covid-19*

Backstrom claimed that he "got very sick" after contracting COVID-19. The BOP medical records indicate that Backstrom was "asymptomatic" and placed in quarantine. (R. 177, Gov't Response Sealed Exhibit 1, Backstrom BOP Medical Records, Pg. 3). Backstrom has never claimed to have any medical condition subjecting him to increased mortality with COVID-19. He lacks any extraordinary and compelling reasons warranting a reduction in sentence as required under Section 3582. Backstrom cannot be assured that he will not contract COVID-19 either in the BOP or the community at large.

5

## II. Attorney General Ordered BOP To Use Its Statutory Authorities To Release Most-Vulnerable Inmates

### a. BOP Has Released More than 6,800 to Home Confinement since beginning of COVID-19 pandemic.

In the wake of the current pandemic, the Bureau of Prisons at the direction of Attorney General William Barr has released 6,853 inmates from its facilities.[1] The Attorney General ordered the Director of Bureau of Prisons to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the on-going COVID-19 pandemic" on March 26, 2020. This initial memorandum precluded from consideration for home confinement release inmates with a PATTERN score exceeding minimum.[2] PATTERN refers to Prisoner Assessment Tool Targeting Estimated Risk and Need assessment required under the First Step Act signed into law by President Donald Trump in 2018.[3]

---

[1] https://www.bop.gov/coronavirus/
[2] https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf

[3] https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf

The Justice Department developed the PATTERN assessment after engaging in extensive consultation with various criminal justice stakeholders including Canadian corrections officials, state corrections officials, academics, victims' advocates, and organizations representing the criminal defense bar.[4] While the PATTERN score is a relatively new tool and the effectiveness remains, perhaps, untested, it serves as an objective measure to use in forecasting a defendant's recidivism risk. Based upon his repeated interactions with the criminal justice system, Mr. Backstrom is ranked as a Medium, meaning that he poses an increased risk of recidivating. (Exhibit 2, Backstrom's BOP PATTERN score).

A memorandum issued by Attorney General Barr on April 3, 2020 expanded the criteria for consideration for release on home confinement to the "most vulnerable inmates at the most affected facilities."[5] The Attorney General's memorandum acknowledged the limited resources of

---

[4] See September 10, 2019, Letter of Nina Ginsburg, President of National Association of Criminal Defense Attorneys
https://www.ncjrs.gov/pdffiles1/nij/grants/254142.pdf

[5] https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf

both the Bureau of Prisons and the United States Probation Department in monitoring released inmates. The Attorney General also acknowledged that releasing inmates from incarceration posed both public safety and community health risks. This memorandum reiterated the need to balance the safety and well-being of both the inmates and the communities to which the inmates could be released.

### i. *Backstrom – A Repeat Drug Trafficking Offender – Does Not Qualify For Home Confinement.*

Backstrom, who has five drug trafficking convictions and has been assigned a medium PATTERN, does not qualify for home confinement. Backstrom received a 168-month prison sentence in 1993 after he pleaded guilty in the Eastern District of Virginia to conspiring to distribute more than five kilograms of cocaine. (PSR ¶ 36). That same year, he pleaded guilty in California to another drug trafficking offense. His state prison term appears to have run concurrently with his federal sentence. (PSR¶ 37). He was released from custody in 1999 eleven years before he committed his next drug-trafficking offense. (PSR ¶¶ 36 & 37). Backstrom received an 18-month prison sentence in Arizona after he was found transporting more than 500 pounds of marijuana in 2010. (PSR¶ 39).

In 2015, Backstrom received a three year sentence, which was run concurrently with his federal prison sentence, after he pleaded no contest to the sale and transportation of controlled substances in Los Angeles County Superior Court. (PSR ¶ 40). Backstrom appears to have now had state drug-trafficking sentences run concurrently to federal prison terms twice. He has committed four serious drug offenses – spanning the Continent – for the price of two. The recidivism risk he poses will only further burden the already overly-taxed capabilities of the United States Probation Department.

### b. Reduction In Sentence Applications/Compassionate Release At FCI-Terminal Island Since February 1, 2020

The Warden of FCI-Terminal Island has received 353 applications for Reduction in Sentence (RIS), which is the request required for inmates seeking release on Compassionate Release Grounds since February 1, 2020. 83 RIS applications are pending review by the Warden while the Warden has denied 264 RIS applications as of July 10, 2010. The Warden recommended for 6 inmates for RIS as of July 10, 2020. Of the 6 inmates recommended for RIS, the Director of the Bureau of Prison has approved 1 inmate for RIS, 3 inmates have been

denied RIS by the BOP's Office of General Counsel, and 2 inmates RIS applications remain pending review by the BOP.

## II.   *Backstrom's Post-Release Proposals*

Over the weekend, Backstrom filed two supplemental pleadings regarding his plans once he is released. (R. 183 & 184). These letters have not been verified by anyone other than the defendant and do not appear to have been vetted by either the BOP or the Probation Department. These rushed, last-minute pleadings demonstrate the shortcomings of the process Backstrom now attempts to force upon everyone else. Having spent much of his adult life in prison, it' Backstrom's rush to exit is no wonder. But his record should give this Court pause before it releases him in the middle of a pandemic with very little structure.

The process created by Congress in the CARES Act creates a process by which Compassionate Release applications can be considered and thoroughly vetted. Allowing Backstrom to skip the line ahead of others not only creates an inequitable process, his half-baked proposals poses a potential risk to a community he's already harmed for decades.  While we can all hope that Mr. Backstrom turns his life around once he is

10

released, his extensive criminal history should leave any reasonable person cautiously skeptical.

## Conclusion

Because Backstrom has not first exhausted his administrative remedies with the Bureau of Prisons, the United States respectfully requests that his petitions to the Court for Compassionate Release be denied without prejudice.

                                         Respectfully submitted,

                                         Matthew Schneider
                                         United States Attorney

                                         /s/ Philip A. Ross
                                         Assistant United States Attorney
                                         United States Attorney's Office
                                         Eastern District of Michigan
                                         211 West Fort Street, Suite 2001
                                         Detroit, MI 48226
                                         Phone: (313) 226-9790
Dated: July 13, 2020                Email: Philip.Ross@usdoj.gov

## Certificate of Service

I hereby certify that on July 13, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record including: Mark H. Magidson, Esq.

/s/ Philip A. Ross
Assistant U. S. Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9790
Email: Philip.Ross@usdoj.gov