UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KEVIN BACKSTROM,

    Defendant.

                          /

Case No. 13-20597

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING KEVIN BACKSTROM'S MOTION TO MODIFY SENTENCE [173, 180] AND REDUCING HIS SENTENCE TO TIME-SERVED**

Defendant, Kevin Backstrom, is serving a sentence of seven years and ten months for conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841, 846 & 856. (ECF No. 151). His is currently incarcerated at Terminal Island Federal Correctional Institute ("Terminal Island FCI"). He is 54 years old and scheduled for release on March 1, 2021, though he states he will be eligible for a transfer to a residential reentry center as soon as September 3, 2020. Bureau of Prisons: Find an Inmate. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results, last accessed on August 10, 2020.

Backstrom sent a letter to the Court requesting legal assistance with his petition for compassionate release under 18 U.S.C. § 3582(c)(1). (ECF No. 173). He argues he should be released from prison to protect himself from the pandemic. The Court appointed counsel for Backstrom, ordered the United States to respond, and scheduled a hearing. Backstrom and the United States filed briefs. (ECF Nos. 177, 179, & 180). The July 6, 2020 hearing focused primarily on whether Backstrom had exhausted his administrative remedies. Following a July 31, 2020 status conference, during which the exhaustion issue was resolved, the Court ordered supplemental briefing and scheduled a second hearing. (ECF Nos. 190, 193). The August 10, 2020 hearing focused on the merits of Backstrom's petition, and the Court granted the petition on the record. For the reasons stated on the record and in the opinion below, Backstrom's motion will be granted, and his sentence reduced to time-served.

## BACKGROUND

Backstrom was born Kevin Pollard on October 6, 1965, to Percy and Mary Pollard. His father died shortly after his birth.  When his mother moved with Backstrom to California she remarried Bill Backstrom, whose name Kevin adopted. Kevin began using marijuana at age 11. (ECF No. 178, PageID.759).

Backstrom enlisted in the United States Navy when he was 19 years old and served from 1984 to 1986. The details of his service are uncorroborated.  He was

arrested and subsequently convicted for a vehicle-theft misdemeanor in February 1986. He was sentenced to three years' probation, which passed without incident. (PSR ¶ 35).

Backstrom married Evett Nelson in 1992, in Las Vegas. A year letter, when he was 27, Backstrom was arrested and subsequently convicted for transporting cocaine and crack cocaine from California to Virginia. He was found with several firearms at the time of his arrest. (PSR ¶ 36). He plead guilty to both state and federal charges and was sentenced to 10 years in California prison, to run concurrent with his 14-year federal sentence. Backstrom's federal sentence was reduced to four years following a Rule 35 motion by the Government. He was released from prison on September 13, 1999. (PSR ¶ 36-37). Then, on September 12, 2004, he was released from federal supervised release. (*Id.*).

Nelson, Backstrom's wife, was involved in an auto accident while Backstrom was incarcerated; they divorced in 2000. Backstrom has an adult daughter from that marriage. (PSR ¶ 51). He also has a teenage daughter and son from a subsequent relationship with Kirian Mira, though his relationship with Mira has been strained. (ECF no. 178, PageID.772; PSR ¶ 52). At the time of his arrest, Backstrom reported that he was self-employed in the music industry. (*Id.*).

With the exception of conviction for driving while under the influence in 2007, Backstrom didn't run afoul of the law again until 2010, when he was sentenced to 18 months in Arizona state prison for possessing 524 pounds of marijuana. (PSR ¶ 39). On October 1, 2013, Backstrom was charged in Los Angeles Superior Court with the sale or transportation of a controlled substance. He pled guilty and was sentenced to three years in prison, to run concurrent with this federal sentence. (PSR ¶ 40).

Backstrom was indicted in this district on April 22, 2014 for conspiracy to distribute a controlled substance and conspiracy to launder money. He was the supplier in a multi-defendant drug-trafficking conspiracy. He told investigators he shipped marijuana and cocaine from California to Detroit and on at least six occasions flew to Detroit in order to drive a rental car back to California with the proceeds of that operation, generally between $100,000 and $120,000. (PSR ¶ 13). Backstrom initially consented to detention but was released on bond on December 8, 2014, the same day that he signed a Rule 11 Plea Agreement. Backstrom cooperated with law enforcement and the Government moved for a downward departure prior to his sentence. He remained on bond in California during this time. On November 8, 2015, this Court sentenced him to 94 months (7 years and 10 months) in prison. (ECF No. 151).

While in prison at FCI Terminal Island, in California, Backstrom completed the Residential Drug Abuse Program ("RDAP"). His program evaluation is cautiously positive and praises Backstrom for his supportive attitude towards others in the program, although faulting him for a deficiency of zeal. His prognosis for a life of sobriety is fair and his evaluator was impressed that Backstrom understood the "damaging effects of his previous lifestyle." (ECF No. 178, PageId.774).

On April 27, 2020, Backstrom tested positive for COVID-19. He was screened daily from May 1, 2020 to May 8, 2020. On each day his temperature was normal and he denied cough, muscle pain, fatigue, or other symptoms. (ECF No. 178, PageID.765).

## ANALYSIS

18 U.S.C. § 3582(c)(1) allows a district court to reduce a prisoner's sentence, once that prisoner has exhausted his administrative remedies, if extraordinary and compelling reasons warrant such a reduction. Under Sixth Circuit precedent, a petitioner under § 3582(c)(1)(A) must exhaust his administrative remedies with the BOP. *United States v. Alam*, 960 F.3d 831, 832-34 (6th Cir. 2020).

Backstrom submitted a request for early release to the Warden of Terminal Island FCI. He did this despite knowing that, as of July 10, 2020, the Warden recommended that only six of the 353 petitions for early release he received should

be granted. Of those six, only one was approved for release by the Bureau of Prisons ("BOP"). (ECF No. 185, PageID.149-150). Backstrom was informed by letter that his appeal was denied. Though the letter was dated July 16, 2020, it was not filed on the docket until July 30. (ECF No. 186, PageID.868). The letter contained a final paragraph explaining that Backstrom may appeal the BOP's denial via administrative review. The potential for administrative appeals does not bar the Court from taking up Backstrom's petition, which his attorney renewed on July 31, 2020. The Sixth Circuit has held that "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d 831 at 834.

Because Backstrom's avenues for relief with the BOP have been exhausted, the Court has three questions to answer. The first is whether extraordinary and compelling reasons warrant a reduction in sentence. The second is whether Backstrom poses a danger to the community. The third is whether a sentence reduction is consistent with the 18 US.C. § 3553(a) factors. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *4 (E.D. Mich. May 7, 2020).

1. <u>Extraordinary and Compelling Reasons for Release</u>

In order to determine if extraordinary and compelling reasons exist to release Backstrom, the Court must determine if a sentence reduction is "consistent with

applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There are extraordinary and compelling reasons for modification where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (quoting U.S.S.G. § 1B1.13 comment n.1(A)(ii))

The statute also permits release for "other reasons" that create extraordinary and compelling reasons for release in combination with a petitioner's medical reasons. Courts in this district have interpreted these "other reasons" to encompass the heightened susceptibility of prison populations to the coronavirus. *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020) (citing U.S.S.G. § 1B1.13 comment n.1(D)). "On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020), *reconsideration denied*, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

Backstrom's facility is one of the worst affected in the country. It has flattened the curve of new infections, but only because over two-thirds of its inmates have already contracted the virus. At least 645 inmates at Terminal Island FCI have contracted COVID-19, including Backstrom. At least ten others have died. Despite these figures, only three inmates and six staff members are currently positive for the virus, according to the BOP's statistics. Bureau of Prisons, Coronavirus, https://www.bop.gov/coronavirus/, last accessed August 8, 2020.

Backstrom tested positive for COVID-19 on April 27, 2020. His medical records do not indicate that he suffered any symptoms. Backstrom disagrees with this assessment and claims he has suffered from fever, body aches, chills, fatigue, and loss of taste or smell. Backstrom may not be at FCI Terminal Island for long, however. He asserts he is scheduled for transfer to a residential reentry center on September 3, 2020. This date is subject to change.

The Court ruled at the August 10, 2020 hearing that Backstrom's predicament created extraordinary and compelling reasons for release. First, Backstrom has contracted the coronavirus and remains in proximity to prisoners who have tested both positive and negative for the disease. His ordeal with the virus created a medical condition warranting release within the meaning of U.S.S.G. § 1B1.13 comment n.1(A). While the BOP may have deemed Backstrom recovered, the Court has no

scientific basis to deduce that he cannot contract the disease again. *See United States v. Ireland*, No. 17-20203, 2020 WL 4050245, at *4 (E.D. Mich. July 20, 2020) (noting that the CDC has advised that "[t]he immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood."). Though Backstrom is not a medically vulnerable person, like so many other inmates who have been released under § 3582, he is not invincible either. He is being housed in a dangerous facility in an extraordinary time and the proliferation of the virus at Terminal Island FCI creates a compelling reason for his release.

Further, the Court has held that Backstrom's petition also provided "other reasons" for his release under U.S.S.G. § 1B1.13 comment n.1(D). There is nothing that Backstrom will gain from a Residential Reentry Center that he can't gain from working for his brother's construction company and pursuing construction certifications. The risk of transferring a prisoner from a facility with a high prevalence of the coronavirus to another residential facility where social-distancing is difficult does not outweigh the minimal reward that will accrue to society or Backstrom from keeping him in custody for another eight months.

2. Danger to the Community

The Sentencing Commission's Guidelines require that an individual granted early release under 18 U.S.C. § 3582 "is not a danger to the safety of any other person

or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13. The Court found on the record at the August 10, 2020 hearing that Backstrom was no longer a danger to others. His PATTERN score was low risk on December 4, 2019, and since then has become medium risk. This change appears related to a BOP policy change rather than any action by Backstrom. Backstrom's BOP record is good and he fared well on bond while awaiting sentence.

Backstrom appears to understand that after two federal drug-trafficking convictions any subsequent conviction will result in an extremely lengthy sentence. His RDAP evaluations, along with his testimony to the Court, evidence a desire to leave his old life behind. Though the release of someone with Backstrom's record always carries some risk, this risk is mitigated not only by Backstrom's age and opportunity for rehabilitation, but also by the requirements this Court will set for mental health and substance abuse treatment as conditions of supervised release.

3. Section 3553(a) Factors

A district court contemplating a motion for compassionate release must consider the § 3553(a) sentencing factors. Those are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;
**(4)** the kinds of sentence and the sentencing range established for--
**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

18 U.S.C.A. § 3553.

The Court's consideration of these sentencing factors is set forth both in this opinion's analysis of U.S.S.G. 1B1.13 and in the record of the August 10, 2020 hearing.

Backstrom's crime was serious. He trafficked destructive narcotics for profit, disregarding the effects of these actions on the lives of the communities affected. That being said, his positive evaluation from his supervising psychologists at RDAP, along with his testimony, his behavior in prison, and his behavior on bond, have persuaded the Court that he has left his criminal career behind.

Backstrom is serving his time in a low-security prison and is allowed to work outside the facility. He is being trained to use a backhoe and other heavy equipment and performs landscaping jobs outside the prison. This new path dovetails with his post-release plans: Backstrom intends to work part time for his brother's

construction company and pursue certifications in environmental compliance. At 54 years old, Backstrom may finally be ready to be the role model to his children he intends to be. Though Backstrom has so far lived a life of manipulation and prevarication, he appears to have learned that such a life does not bring long-term profit.

The Court will not maintain a sentence that could be a death sentence, for Backstrom or for his peers. Demonstrating the humanity of the law promotes its respect more so than does stressing its inflexibility. Releasing Backstrom mere weeks before he is scheduled to be transferred to a Residential Reentry Center will not diminish the deterrent value of his 2015 sentence. *See United States v. McConico*, No. 15-20267, 2020 WL 4431424, at *4 (E.D. Mich. July 31, 2020) ("Individuals contemplating criminal behavior could hardly be expected to rely on an unforeseen event on par with a pandemic to reduce the prison sentences they would risk by their actions.").

## Conclusion

Accordingly, for the reasons articulated in this order and on the record at the August 10, 2020 hearing,

**IT IS ORDERED** that Backstrom's Motion for Early Release (ECF Nos. 173, 180) is **GRANTED**. His sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Backstrom be **IMMEDIATELY RELEASED** from custody.

**IT IS FURTHER ORDERED** that upon his release from custody, Backstrom will begin his eight-year term of **SUPERVISED RELEASE**, as outlined by the November 24, 2015 Judgment (ECF No. 151).

**IT IS FURTHER ORDERED** that Backstrom's Special Conditions of Supervised Release are **MODIFIED** to provide: 1) that he shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions, 2) that he shall participate in a mental health treatment program—in addition to the drug treatment program already ordered—as determined to be necessary by his probation officer, and, 3) that he shall undergo a strict 14-day quarantine upon his release.

**SO ORDERED**.

Dated: August 11, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge